UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.

RICHARD FREDERICK DIXON,

   Defendant.
                              /

No. 72-46674

Hon. Laurie J. Michelson

**GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Defendant Richard Dixon seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) because of his advanced age and because of his medical conditions of long-COVID, vertigo, and an undiagnosed skin condition. (ECF No. 2.) Dixon also explains that his medical condition is impacted by a recent fall in which he injured his head and hip. *Id*. The government is sympathetic to his illness and condition. However, Dixon actively receives medical treatment within the Bureau of Prisons ("BOP"). Therefore, he fails to present extraordinary and compelling reasons to justify his release.

1

Further, he was convicted by a jury of aircraft piracy and kidnapping and has served less than two years of his forty-year sentence. This, after a state court conviction for second-degree murder. The Court should deny his motion after considering the factors set forth at 18 U.S.C. § 3553(a), particularly the need to protect the public and Dixon's history and characteristics, demonstrating that he would pose a danger if released.

**I.    Background**

    **A.    Criminal Conduct**

On January 19, 1972, Dixon was indicted by a Federal Grand Jury in the Eastern District of Michigan on charges of air piracy, in violation of 49 U.S.C. § 1472(i), and kidnapping, in violation of 18 U.S.C. § 1201(a) (*see* ECF No. 1 at Pg ID 1) and convicted on December 16, 1976, when a jury returned a verdict of guilty on both counts (*see id.* at Pg ID 6).[1] The Sixth Circuit affirmed Dixon's convictions on appeal. *United States v. Dixon*, 592 F.2d 329, 331 (6th Cir. 1979), *cert. denied*, 441 U.S. 951 (1979). The facts of the underlying conviction are summarized by the Sixth

---

[1] The Government reached out to the probation department to obtain a Presentence Investigation Report. However, due to the case's age, probation could not retrieve one.

2

Circuit below as follows:

> The airplane hijacking from which the present charges arose occurred on October 9, 1971, when Dixon, armed with a revolver, seized a flight attendant who was assisting boarding passengers on an Eastern Airlines jet at the Detroit Metropolitan Airport. Dixon then ordered the pilot to fly the plane to Cuba. Dixon apparently remained in Cuba for some time after the hijacking.
>
> Approximately five years later, on January 9, 1976, Dixon was arrested by the Michigan State Police in connection with the murder of a police officer. During the course of the state investigation, state authorities discovered that Dixon was wanted by federal authorities on the air piracy and kidnapping charges.

*Id.* Following a jury trial Dixon was convicted, and "Dixon was sentenced to twenty year terms of incarceration on each count of the indictment, the sentences to run consecutively and consecutive to the life sentence Dixon received for his second-degree murder conviction in Michigan Circuit Court." *Id.* at 333. Dixon is serving his sentence at Hazelton USP, with an anticipated release date of March 27, 2048. (Exhibit A – Inmate Data, at 2.) He began serving his sentence on May 19, 2021. (*Id.* at 3.) He has served approximately twenty-three months of a forty-year sentence.

## B. Exhaustion and Request for Compassionate Release

Dixon seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his advanced age and health issues. (ECF No. 2 at Pg ID 15-22.) On April 23, 2022, Dixon submitted a request for compassionate release to the Federal Bureau of Prisons ("BOP") because of his age and time incarcerated within state jail and the BOP. (Exhibit B – Initial Request for CR, at 2.) The warden denied this request on June 10, 2022. (Exhibit C – Initial Denial.) In that denial, the warden noted that Dixon does not meet any of the criteria for compassionate release under BOP Program Statement 5050.50. (*Id.*) On October 23, 2022, an attorney submitted a second request citing his age and medical condition. (Exhibit D – Second Request for CR, at 2.) The warden denied this request also on November 4, 2022. (Exhibit E – Second Denial.) In that denial, the warden noted that "while [Dixon is] of advanced age and suffer some age-related health conditions, "[his] provider has determined that it does not substantially impact [his]

4

ability to function in a correctional environment." (*Id.*) Dixon has now filed a motion for compassionate release. (*See* ECF No. 2.)

An inmate may bring a compassionate release motion once he or she exhausts any administrative remedies or 30 days after requesting relief from the BOP. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) (citing *United States v. Alam*, 960 F.3d 831, 833-35 (6th Cir. 2020)). Thus, the government agrees that Dixon has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).

## C. Dixon's Medical Records

The government obtained Dixon's medical records for the past two years from BOP, which are filed under seal as Exhibits F and G. (Exhibit F – Dixon's BOP Health Records 2022, Exhibit G – Dixon's BOP Health Records 2023 (*filed under seal*).) The most recent clinical encounter on February 2, 2023, states that he is taking medication for a skin condition and iron deficiency anemia. (Ex. G at 1.) In January of this year, Dixon was seen in the housing unit for a follow-up on his skin condition. (*Id.* at 3.) He denied any open lesions or any weakness or falls. (*Id.*) He further denied any pain, fever, aches, chills, nausea,

5

vomiting, headaches, dizziness, chest pain, or shortness of breath. (*Id.* at 7.) Records from this year show that Dixon suffers from peripheral vertigo. (*Id.* at 21, 26, 38.)

The records reveal that Dixon had a Transient Cerebral Ischemic Attack ("TIA") from COVID-19 in 2020. (*Id.* at 26.) However, his treatment from this year only mentions primarily complaints of a skin condition. (Ex. G.) The reports explain that his skin problems are currently being managed and treated with medication, and that the itching was onset from COVID-19 two years ago. (*Id.* at 23.) There are no other complaints of COVID symptoms or positive tests, in fact, some reports deny any COVID-19 residuals. (Ex. F at 108, 116.)

Dixon is 82 years old, and he is not vaccinated against COVID-19. (Ex. H (filed under seal).) The vaccine consent form states that the vaccine was declined because Dixon already had COVID-19. (*Id.* at 3.)

6

## II. Discussion

### A. Governing Law

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of defendant after defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Before the change to the First Step Act, only the BOP could move for compassionate release. The change now allows prisoners to move for relief when the Bureau of Prisons declines to act." *See United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022).

The Sixth Circuit explained that compassionate release is a "three step inquiry" as follows:

> Prisoners still must show that 'extraordinary and compelling' reasons warrant the reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Courts must confirm that any sentence reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' *Id.* § 3582(c)(1)(A). And defendants must persuade the district judge to grant the motion after the court considers the § 3553(a) factors.

*Id.* (citing *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020).) Therefore, before a court can grant compassionate release, it must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *Ruffin*, 978 F.3d at 1008–09. The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling

circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although the Sixth Circuit has concluded that this policy statement is not currently binding in connection with motions filed by defendants, *see United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), the courts of appeals have recognized that it continues to provide important "guideposts." *See, e.g., United States v. McGee*, 992 F.3d 1035, 1045 (10th Cir. Mar. 29, 2021).

In application note 1 to the policy statement, the Sentencing Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  Medical Condition of the Defendant.—
>
>     (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life

9

        expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

### B. Dixon Cannot Show that his Status Qualifies as "Extraordinary and Compelling" Reasons for Early Release

Dixon argues that his age and medical conditions qualify as extraordinary and compelling reasons for early release. (ECF No. 2.) "Under the statute, the defendant has the burden of showing that an extraordinary and compelling reason supports a reduction in sentence." *United States v. Shy*, 2023 WL 2795312, at *2 (E.D. Mich. Apr. 5, 2023). While the Sixth Circuit has recognized that district courts have the discretion to define "extraordinary and compelling," the sentencing guideline definitions of qualifying conditions are informative. *See United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021).

The sentencing guidelines define extraordinary and compelling related to medical condition as a terminal illness ("a serious and advanced illness with an end-of-life trajectory,") or "a serious physical or medical condition…that substantially diminished the defendant's ability to provide self-care in the environment of a correctional facility

11

and from which [he] is not expected to recover." § 1B1.13 App. Note. 1(A)(i) and (ii). The sentencing guidelines define extraordinary and compelling related to age as: (1) someone over the age of 65 years old; (2) "experiencing a serious deterioration in physical or mental health because of the aging process"; and (iii) who has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. § 1B1.13 App. Note. 1(B).

Dixon fails to establish his burden under either standard. In Dixon's brief he acknowledges that he "has not served 'at least 10 years or 75 percent of his or her term of imprisonment' yet." (ECF No. 2 at Pg ID 17.) While the Government is sympathetic to Dixon's condition of advanced age, it cannot ignore that he has only served a small portion of his sentence.

Courts treat compassionate release "due to medical conditions [a]s...a rare event...typically...after [prisoners] [serve] a significant term of incarceration." *United States v. Willis*, 382 F.Supp.3d 1185, 1188-89, (D.N.M 2019) citing cases. Dixon has not been diagnosed with a terminal illness. He cites his medical conditions of long-COVID, vertigo, and an undiagnosed skin, as reasons for early release. (ECF

12

No. 2 at Pg ID 18-19.) However, the medical records do not support an argument that Dixon is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility. Dixon's condition is being managed with medication and he reports not having any COVID-19 residuals. While Dixon's 2020 hospitalization and experience was unfortunate, he has been getting care at the BOP since he began serving his sentence in 2021. Furthermore, prisoners who believe they are receiving inadequate medical care have a clearly established remedy in the law: an Eighth Amendment claim. *See Dominguez v. Correctional Medical Services*, 555 F.3d 543, 552 (6th Cir. 2009). Dixon brought no such suit and almost certainly could not sustain one. A reduction of his sentence to time served is not warranted by this unsupported allegation.

### C. The Court Should Deny Dixon's Motion Based on the 18 U.S.C. § 3553(a) Factors.

Here, despite some of Dixon's persisting diagnosis, the factors set forth at 18 U.S.C. § 3553(a) weigh against granting Dixon's motion. First, the nature and circumstances of the offense weigh heavily against release. 18 U.S.C. § 3553(a)(1). Dixon hijacked a plane at gunpoint and

13

kidnapped several victims. [2] Further, because of Dixon's flight and his whereabouts being unknown for approximately five years until he was arrested for the murder of a Michigan police officer, he could not be held accountable for the offense until he was sentenced in 1977.

Dixon's history and characteristics also strongly weigh against release—particularly the fact that he was previously convicted of several felonies including a previous conviction in federal court of bank robbery in 1968. 18 U.S.C. § 3553(a)(1). Dixon amassed and incredible criminal history in his 20s and 30s. In 1963 he was convicted of robbery in Rochester New York and sentenced to seven in a half years to fifteen years in prison. He was released early and in 1968 he was convicted of robbery and sentenced at this court by the late Judge Thaddeus M. Machrowicz to a twenty-year sentence. On August 27, 1971, he was released early for good behavior. Less than two months later, he

---

[2] The United States Sentencing Commission's agreed upon but not yet enacted amendments to the Sentencing Guidelines — which would include an new application note regarding "notification of victims" and encourages courts "to make its best effort to ensure that any victim of the offense is reasonably, accurately, and timely notified, and provided, to the extent practicable, with an opportunity to be reasonably heard, unless any such victim previously requested not to be notified." U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines (2023). Here, the victims of the offense have not been contacted.

14

hijacked the flight which his current sentence is based on. Dixon returned to the United States at some point and almost five years later killed a South Haven Michigan police officer. Dixon was convicted of the murder by the jury in state court and then convicted of hijacking and kidnapping by a jury in federal court.

The government is most concerned that Dixon would present a danger to the community if released, and therefore Dixon must remain in prison to protect the public. 18 U.S.C. § 3553(a)(2)(C). Further, Dixon continued to commit crimes in an escalating fashion, even after receiving custodial sentences and being given the opportunity to be released early. As such, the sentences promote respect for the law and afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(A),(B).

The government is sympathetic to Dixon's circumstances and also wants to ensure that he will receive proper medical care as he ages and battles any illness. 18 U.S.C. § 3553(a)(2)(D). His medical records indicate that he has received, and continues to receive, comprehensive medical treatment while in BOP custody. Despite the unfortunate circumstances of Dixon's illness, these considerations—particularly

15

Dixon's criminal history and concerns for the safety of the public—

counsel against relief.

## II. CONCLUSION

For the reasons described above, the defendant's motion should be denied.

                                             Respectfully Submitted,

                                             DAWN N. ISON
                                             United States Attorney

                                             *s/Jasmine A. Moore*
                                             JASMINE A. MOORE
                                             Assistant United States Attorney
                                             211 W. Fort Street, Suite 2001
                                             Detroit, MI  48226
                                             (313) 226-9759
                                             Jasmine.Moore@usdoj.gov

Dated:  May 1 2023

## CERTIFICATE OF SERVICE

I certify that on May 1, 2023, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the ECF system.  I also certify that I have served the foregoing document by first class mail on:

Richard Frederic Dixon
Register Number 26397-138
Hazelton USP
U.S. Penitentiary
P.O. Box 2000
Bruceton Mills, WV 26525

*s/Jasmine Ayana Moore*
JASMINE AYANA MOORE
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9759
Jasmine.Moore@usdoj.gov